**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAF INTERNATIONAL, INC., | Civil Action No. 20-2569 (JMV) |
| Plaintiff, | |
| v. | |
| ULTIMATE LEATHER APPAREL, INC. and ASAD AHMED, | OPINION |
| Defendants. | |

**Falk, U.S.M.J.**

This matter comes before the Court upon Defendants' motion to stay this action pending the outcome of related proceedings before the Trademark Trial and Appeal Board. (CM/ECF No. 9.) The motion is opposed. The motion is decided on the papers. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion to stay is **granted**.

### BACKGROUND

This is an action for trademark infringement. Plaintiff, Shaf International, Inc. ("Shaf"), has been engaged in the business of selling premium clothing, leather goods, and

1

accessories in the United States primarily under the MILWAUKEE LEATHER® brand since 1991. (Am. Compl. ¶ 14.) Plaintiff describes itself as the "leader in the motorcycle industry for these categories of goods" and touts itself as one of the "best-known brands" in the industry. (Am. Compl. ¶ 15.) Plaintiff claims to have built a family of MILWAUKEE-formative sub-brands using design marks incorporating the term "MILWAUKEE" ("Plaintiff's MILWAUKEE-Formative Marks")[1], using these marks as early as 1998. (Am. Compl. ¶¶ 16, 19.)

In August 2018, Defendant Ultimate Leather Apparel, Inc. ("Ultimate Leather") registered two "MILWAUKEE RIDERS" trademarks with the United States Patent and Trademark Office ("USPTO"). (Def.'s Br. at 2.) According to Plaintiff, Ultimate Leather and its owner, Defendant Asad Ahmed ("collectively "Defendants"), engaged in the sale of apparel products, leather goods and related products bearing the "MILWAUKEE RIDERS" marks to motorcycle enthusiasts and consumers nationwide. (Am. Compl. ¶¶ 30, 32.) Plaintiff claims that Ultimate Leather's use of its "MILWAUKEE RIDERS" marks which are similar to Plaintiff's own MILWAUKEE-Formative Marks infringe upon Plaintiff's federal, state, and common law trademark rights and that Defendants' goods are likely to cause confusion as to affiliation, connection, or association between Plaintiff's and Ultimate Leather's products. (Am. Compl. ¶ 1.)

On June 18, 2019, Shaf filed a Petition to Cancel Ultimate Leather's

---

[1] The design marks include MILWAUKEE PERFORMANCE®, MILWAUKEE PERFORMANCE FOOTWEAR®, MILWAUKEE PERFORMANCE APPAREL®, and MILWAUKEE PERFORMANCE ACCESSORIES®. (Am. Compl. ¶ 16.)

2

MILWAUKEE RIDERS trademark registrations at the Trademark Trial and Appeal Board ("TTAB") of the USPTO contending, among other things, that Defendants' trademarks are confusingly similar to Shaf's MILWAUKEE-Formative Marks. (Def.s' Br. 2; Declaration of William W. Stroever ("Stroever Decl.") at ¶ 4.) On August 2, 2019, Ultimate Leather filed a counterclaim in the TTAB case, seeking cancellation of Shaf's MILWAUKEE-Formative Marks on the grounds that Shaf had fraudulently misrepresented to the USPTO that it was the exclusive user of the term "MILWAUKEE" in the context of sale of motorcycle apparel. The parties continued with administrative proceedings before the TTAB through the close of discovery.

On March 10, 2020, Shaf filed its Complaint against Defendants in the District Court. Shaf filed an Amended Complaint on May 23, 2020, asserting claims for trademark infringement in violation of 15 U.S.C. § 1114, false advertising, unfair competition, and false designation of origin in violation of 15 U.S.C. § 1125(a), New Jersey statutory and common law claims for unfair competition and trademark infringement, as well as seeking cancellation of Ultimate Leather's two MILWAUKEE RIDERS designations.[2] The same day, Shaf filed a motion with the TTAB to suspend the parties' proceedings. (Stroever Decl. at ¶ 4.) Discovery in the TTAB case closed on April 5, 2020. On April 24, 2020, the TTAB suspended the proceedings pending the outcome

---

[2] Plaintiff's original Complaint asserted a claim for violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-2. (CM/ECF No. 1.) On May 11, 2020, Defendants moved to dismiss the NJCFA claim and stay the case pending outcome of the TTAB proceedings. (CM/ECF No. 9.) Plaintiff subsequently filed an Amended Complaint omitting its NJCFA claim. Consequently, Defendants' motion to dismiss became moot. The Court now only need consider the motion to stay.

3

of the District Court case.  (Id.)

On May 11, 2020, Defendants' moved to stay this case pending the outcome of the related proceedings before the TTAB.  (CM/ECF No. 9; n. 2, *infra.*)  Arguing that grant of a stay will not prejudice Shaf, Defendants contend that staying the case and permitting the TTAB to consider the issues before it, including whether Ultimate Leather's marks are entitled to trademark protection, has the potential to expedite Shaf's claims for relief and may greatly simplify any issues remaining before the Court when the case resumes.  Defendants also contend that the interests of the parties and judicial economy are best served by a stay.  Shaf opposes the motion essentially arguing that the Court should not stay the case because the TTAB matter is already stayed.

## DISCUSSION

District courts have broad powers to stay proceedings.  Bechtel v. Laborers' Int'l Union, 544 F.2d 1207, 1215 (3d Cir. 1976).  A decision to stay litigation lies within the sound discretion of the court.  Texaco, Inc. v. Borda, 383 F.2d 607, 608 (3d Cir. 1967).  In deciding whether to stay a case, the Court considers whether a stay would prejudice the non-moving party and if it would further the interest of judicial economy.  See Ford Motor Credit Co. v. Chiorazzo, 529 F.Supp.2d 535, 542 (D.N.J. 2008).  The party seeking a stay of a civil litigation bears the burden of demonstrating that a stay would be appropriate.  Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936).

The Court has considered the parties' arguments and the applicable law and finds that, for the reasons stated below, a stay is warranted here.

A stay of the action would not unduly prejudice Shaf. Quite to the contrary, Shaf is far more likely to obtain the relief it seeks faster by an adjudication of its claims before the TTAB. The TTAB case has been pending since June 2019, and is much further along than the case before this Court. Discovery in the administrative proceeding already closed on April 5, 2020, and the case is ripe for dispositive motion practice which could resolve the dispute entirely. (Def.'s Br. at 6.) Moreover, Shaf litigated the case before the TTAB for nearly a year before commencing this action in the District Court. If it wanted to have its claims decided in the federal court, Shaf could have filed the case here in the first instance. Lack of prejudice weighs in favor of a stay.

Judicial economy is also promoted by a stay. A decision by the TTAB may dispose of one or more of the claims which are the basis for the District Court case. It appears that at the crux of the District Court and TTAB cases is the overarching issue of whether Ultimate Leather's MILWAUKEE RIDERS trademarks are confusingly similar to Shaf's MILWAUKEE-Formative Marks. Therefore, a determination by the TTAB regarding the scope of Shaf's marks and whether Ultimate Leather's marks are confusingly similar, if adopted by the Court, conceivably could be dispositive of most or all of Shaf's federal court claims. For example, a decision on the issue of likelihood of confusion by the TTAB arguably would resolve Shaf's assertion of trademark infringement and its request to cancel Ultimate Leather's trademark registrations pending in the federal court. Compare Smart Vent, Inc. v. USA Floodair Vents, Ltd., No. 10-0168, 2012 WL 12909887 (D.N.J. April 25 2012) (in context of patent reexamination

stays are "particularly appropriate when the reexamination result might assist the court in making a validity determination or would eliminate the need to make an infringement determination"). Thus, adjudication of the claims by the TTAB has the potential to largely, if not completely, resolve the District Court case.

It is also in the interest of judicial economy to allow the first filed case to reach its conclusion, resolving the issue of the validity of Ultimate Leather's marks, rather than effectively re-starting the case here. As noted above, discovery in the TTAB case is closed and the matter is ripe for dispositive motion practice. By contrast, the District Court case has effectively just started. A scheduling order has not been entered and discovery has not begun. Basically, the case has not advanced beyond the pleading stage. Neither the Court nor the parties have invested any time or resources in the District Court litigation that would be wasted if the case were stayed. These reasons weigh heavily in favor of a stay.

It is likewise in the best interest of all parties to stay this case. As explained above, Shaf is more likely to get a decision on the relief it seeks much sooner before the TTAB given the progress to date in the administrative proceeding. Additionally, Defendants arguably will suffer hardship and prejudice if compelled to proceed with the District Court case now. Defendants had litigated their dispute with Shaf before the TTAB for nearly a year before the matter was stayed and devoted time and money to that case. (Def's Br. at 7.) Defendants should not have to duplicate their efforts and spend additional resources merely because Shaf would now prefer to have its claims heard here.

Commencement of a federal court case by Shaf seeking a ruling on essentially the same issue already pending before the TTAB and expecting Defendants to essentially begin litigation of their claims all over again arguably could be a waste of time and resources. See Tigercat Inter'l, Inc. v. Caterpillar Inc., No. 16-1047, 2018 WL 2049816, *5 (in granting a stay of newly-filed District Court proceedings in favor of a TTAB proceeding that was ten days before the close of discovery, the Court stated "resetting the clock at this [late] stage of the proceedings strikes the court as a monumental waste of time, money and effort").[3]  Thus, the interest of the parties weighs in favor of a stay.

## CONCLUSION

In sum, the Court finds any disadvantages from the inherent delay of a stay are outweighed by advantages of allowing the TTAB to render a decision before proceeding with this action.  For the reasons stated above, Defendants' motion to stay this action pending the outcome of the related proceedings before the TTAB is **granted**. A separate Order accompanies this Opinion.

s/ Mark Falk
**MARK FALK**
**United States Magistrate Judge**

**DATED: December 7, 2020**

---

[3] Shaf has not substantively addressed Defendants' arguments except to say that a stay is not warranted because the TTAB has issued a stay of its own proceedings.  However, it bears noting that the TTAB's decision to enter a stay was precipitated by Shaf's request for one.  (Def.'s Reply CM/ECF No. 17.)